*128 OPINION of the Court, by
Judge Owsley.
This is a controversy between adverse conflicting land claims. The appellee was complainant in the court below ; he holds the junior patent; the validity of his entry, therefore, forms the principal inquiry in this cause. Its calls are as follows, to wit : “ Isaac Hite, &e. enters 2000 acres of land on the north side of Harrodsburg, adjoining said town,” entered May 10, 1780.
Harrodsburg is proven to have been settled as early as 1774, and its notoriety from that period to the date of the appellee’s entry is clearly and abundantly proven. But what were the limits or boundary of the town at the date of the appellee’s entry, is the main and important inquiry in this cause.
On the part of the appellee it is urged that the boundary of 640 acres, reserved by the act of 1779 for the' use ol the inhabitants of the town, should form the boundary of the town, and that by construction of law the ⅛40 acres should lie in a square at the cardinal *129 points, with its centre at the ceytf< of the town ; and the northern boundary of the 640 •'eres, when thus bounded, should form the base of the appellee’s entry.
That act provides that “ whereas several families, for their greater safety, have settled themselves in villages or townships, under some agreement between the inhabitants of laying off the same into town lots, to be divided among them, and have from present necessity cui-rivaled a piece of gr ound adjoining thereto in common : be it enacted, that six hundred and forty acres of land, whereon such villages and towns are situate, and to which no other person hath a previous legal claim, shall not be entered for or surveyed, but shall be reserved for the use and benefit of the said inhabitants until a true representation of their case can be made to the general assembly, that right and justice may be done them.”
In the determination of this cause we deem it unnecessary to decide what form the 640 acres reserved by the act should assume : for were it admitted that it should be laid off in the manner contended for by the appellee, the conclusion that its northern boundary should form the basé of his entry would by no means result. The entry calls to adjoin the town : to justify the conclusion contended for, therefore, the northern boundary of the land reserved by the act must have formed the northern boundary of the town when the ap-pellee’s entry was made. This, however, was not the ease. The evidence in the cause abundantly proves the limits of the town, when the act passed, were not so extensive. But that it then had existence, is manifest.
To give the law any efficacy in relation to Harrods-burg, it must have existed at the time the law passed, for the use and benefit of whose inhabitants 640 acres were reserved. The object of the law was not to establish the town, extend its limits, or give to it shape or boundary ; but to reserve for the use and benefit of its -inhabitants 640 acres of land, until further legislative provision might be made. The plain and obvious infi-port, then, of the call to adjoin the town, is to adjoin the northern boundary of the town as it was known to exist when the appellee’s entry was made, and not to adjoin the land reserved by the act for the use and benelK sf the inhabitants of the town.
*130 gut jt is urged that (he locator of the appellee’s entry could not have intended to include land which was not permitted by law to be located ; and the act having reserved 6-tO acres, to include the town, and prohibited a survey or entry being made thoreon, it is therefore contended that the intent of the locator by the call to adjoin thie town, should be construed to be, to adjoin the land reserved for the use and benefit of the inhabitants of the town. If it be true, as we think it evidently is, that the act gave no existence, shape or boundary to the town, but that it bad acquired a name distinct and independent of the law reserving the 640 acres, and that the limits of the town were variant from that which is contended should be the boundary of the land reserved, the principle of construction contended for is certainly inadmissible. It would be rejecting an express call in the entry', by construction, purely to avoid prejudicial consequences to the appellee’s claim. This ought not to be done. The intent of the locator should be deduced from the reasonable import of the words of the entry :■ and no prejudicial consequences resulting to his claim should change this rule of construction.
We are of opinion, therefore, that the entry of the appellee must adjoin the town on the north, without regard to the ccnstructive boundary of the land reserved by the act of 1779.
But it is objected the northern boundary of the town, at the date of the appellee’s entry, is not sufficiently identified and established in this cause ; and hence it is argued that his entry cannot be supported. It is true the town was not established by any legislative act prior to that date, nor does there exist any record evidence of a demarkation of boundary at that period; and though some of the witnesses speak of lots having been laid off in the town as early as 1774, from a general view of the whole evidence taken in the cause it is made very questionable whether even a private survey, or any other actual demarkation of boundary of the town had been made at the date of the appellee’s entry : for several of the witnesses who lived in the town and were very conversant in that part of the country, say they do not know that the town in 1780, was circumscribed by any particular boundary. To select one point in preference to another, north of the fort, as the northern boun- *131 áary, would, under the circumstances detailed in evidence, be acting arbitrarily, and perhaps in a way not to be justified by the evidence. The tovvn, however, had previous to that date acquired general notoriety ; and though the evidence may be uncertain as to the boundary north of the fort, that place is abundantly proven to have formed the principal residence of the citizens at that date, and necessarily a component and principal part of the town. That the town extended north as far as the fort, there can be no doubt. As, therefore, there exists great uncertainty whether any actual demarkation of boundary was made to the town before the appellee’s entry was made 5 and as the e vi-dence in the cause has not satisfactorily proven the limits of the town north of the fort at that date, we think the appellee’s entry should have been surveyed in a square at the cardinal points, and adjoining the fort on the north in the centre of the base, and extending north for the quantity: that for so much of the land in contest as will be included in a survey when the appellee’s entry is thus surveyed, we are of opinion he has the better right, and that the appellants should be decreed to convey to him.
We have thought it unnecessary tó notice ⅛⅜ appel-Jants’ entries, as but one was relied on in argument, and ■that when correctly surveyed will not include any of the land to which the appellee, according to his opinion, has a right.
The decree of the circuit court must be reversed, the cause remanded to that court for such further proceedings to be had therein as may be necessary to carry into effect the principles of this decision. The appellee must pay the appellants their costs expended in this court.